Good morning. May it please the Court. Kara Hartzler, Federal Defenders, on behalf of Mr. Sanchez-Martinez. For five months, Mr. Sanchez sat in jail and waited for the prosecutor to turn over discoveries so his case could go forward. Every error here stemmed from that delay. But I'd like to start with the question of whether the June 8 indictment was infected by the Speedy Trial Act violation. This issue is controlled by a pure legal question. When did the district court's dismissal order legally take effect? And the answer is simple. The government asked for a stay to June 9, the court granted a stay to June 9, and the dismissal order legally took effect on June 9. Counselor. But wasn't the purpose for the stay to just make sure that the defendant would be available for trial? That he wouldn't be released by the Bureau of Prisons? Well Your Honor, the district court's statement doesn't reflect that. I'll read from ER 649 where the prosecutor says, I could probably get into the grand jury this Wednesday. Can Your Honor stay the dismissal order until the 9th, this Friday? District court. Yes, I'll stay it until the 9th. There was no discussion whatsoever there that it was supposed to be stayed for one reason and not for another. Even if they had discussed it in that moment, I think it would be very questionable for a court to be able to say, well, I will stay this in a way that benefits the prosecutor but not the defendant. Well, but Counselor, to be frank, the time is ticking and this strikes me as your weakest argument. So I want to be very candid with you about that. I read the record the way Judge Marshall does. The district court's intent seems to me to be very clear. And it's tough for you to argue that this wasn't to benefit your client when after all what was happening, it's unusual to be sure. But of course, the condition of all of this was that the mandatory tenure minimum wasn't going to appear in the new indictment. So this is a really tough argument for you. I'll then turn to my first argument, Your Honor. And that argument is, first of all, we would say that the district court here didn't meet the high standard that is required for explanation in terms of the Speedy Trial Act. In Taylor, the Supreme Court specifically said that in the context of the Speedy Trial Act statute, district courts have to, or I'm sorry, reviewing courts have to undertake a more substantial scrutiny. And what happened here is that the district court didn't even mention these factors by name. Basically, the district court focused primarily on the issue of, was there prejudice in the form of the mandatory minimum? And that doesn't get to... The recollection is there was briefing, forgive me for interrupting. I want to be sure I'm right about this, that there was briefing on this issue generally. And that the judge said at hearing number one, you haven't identified the statutory factors for me. And then a supplemental brief was filed by defense that did exactly that. So if that's right, and I guess that is a baked in question, because I want to be correct if I've got that wrong. But should we not understand that the judge had those factors right in front of him and was, from his other comments, he's certainly aware of them? Certainly. It was discussed in briefing, Your Honor. But the problem is that under this case, of course, Cape's Law, that's not enough. So for instance, in the case of White, which we mentioned in our briefing, the district court essentially said, I have duly considered all the statutory factors. And we didn't even get that here. We didn't even get the court saying, I have considered the impact of a re-prosecution, the facts and circumstances, the seriousness of the offense. So on the seriousness of the offense, that seems to me to be the elephant in the room, because your client was charged with bringing a ton of marijuana, literally, into the country. And that was the basis for the mandatory minimum, the 10-year mandatory minimum. And that one seems to me to just be manifest, part of both hearings. I'm more concerned with what the extent to which the purpose of the Speedy Trial Act would be undermined if an exception were made here. I mean, he says at one point in the transcript, he says, I'd like to know what the Ninth Circuit thinks about this five-month delay. So what do we do about that? Well, I think certainly one thing that the court could do is remand and say, look, we need you to explain these factors more. But I think another thing that is really at the heart of this case is, did the government do the right thing here? In other words, should they be allowed to have this kind of delay for five months, and then not even give us a good reason as to why there was a delay? And should they then be allowed to essentially just not suffer any consequences for that? And I think that's a real... Well, arguably, they suffered a consequence because the 10-year mandatory minimum went away. And the district court, I think, makes a comment where he's trying to get back to reset, where he certainly didn't make any excuses for the government's failure here for five months. It was an extraordinary delay without any excuse. And yet, the reset is this, what I referred to earlier, is the unusual re-indictment so that the 10-year mandatory minimum didn't appear. What about, is that a sufficient sanction? No, I don't think it is. And the reason is, Your Honor, because first of all, there was some other shenanigans in this case. Not only was there this five-month delay with no explanation, with no reason that it won't happen again in the future, but this prosecutor and, frankly, this U.S. Attorney's Office has had a problem with the Speedy Trial Act violation in the past. And if the court... You're referring to the first U.S. attorney who was assigned to the case? That is correct. But, Your Honor, as we pointed out in our briefing, there's also been essentially four times more many Speedy Trial Act motions granted in the Southern District of California in the last several years than there has been in any other California district or in Arizona. Not only that, Your Honor, but there's also been, unfortunately, by the U.S. Attorney's Office in the Southern District, there has been this trend of essentially relying on arguments that are foreclosed by this court's case law in Sutter. The last time they did that, this court called it a disingenuous argument, but then they used that same argument here. In other words, what I'm concerned about and why we think that this needs to be dismissed with prejudice is because if you don't, this pattern is going to continue because they will know that all they need to do is just re-indict and then the problem will go away. But the Speedy Trial Act is not just about a defendant's right. As the Supreme Court has said, it's also about the right of society. It's about the right of society to essentially have people brought to trial expeditiously. And unless this court takes action in cases like this, there is going to be no consequence and there is going to be no change in behavior by either the prosecutor in this case or the U.S. Attorney's Office or even the district court who was allowing this just to go through. And I take Your Honor's point that, well, perhaps it took them back to the same place that they were before. But the problem is that if you just do that, then there's no incentive to do anything different in the future. Did you plan to comment on the evidence that was introduced and received at trial and the fact that one tape was missing? Right. And I think that's the entire tape itself. And I think the problem there is because when you didn't have that whole tape, what the government then did during trial is they relied on those small snippets without having the complete tape and they relied on them a lot. At least three times during the trial, the jury was shown this video. They made a lot of it when they went through the direct examination. They showed it again when the prosecutor was doing the closing argument. And then the jury asked to see it a third time during deliberations. So it's simply not the case that you can say that this was an inconsequential part of the trial. But the tape didn't show who was driving the truck. It didn't, it alone didn't even show which truck it was. And the person who selected the snippets, if we can call them that, I think that's what we mean, testified and was subject to cross-examination about the extent to which he chose just those, why just those, and he said there wasn't other footage that captured the images. And the jury heard all of that. So how do we get to prejudice? Well, the problem is that the truck owner also said that there was a time difference in that the tape was, they weren't sure whether it was an hour off or not. And that hour off could have affected it because it could have shown that our client actually did bring the truck back within the time period that he said he did. So there was a big credibility issue that came about as a result of that. And with the court's permission, I'll save the remainder of my time. Thank you. We took you over. We'll put two minutes on the clock when you come back. Good morning. Good morning. May it please the court, Nicole Reese Fox, the United States. The central question the court is asked to review here is whether the district court abused its discretion in determining that the proper remedy for the Speedy Trial Act violation in this case was a dismissal without prejudice. And that in order to reverse the district court, this court would need to find that that was illogical or implausible or without support in the record. And the court would be hard pressed to find that here. I'd like to address this question about the five months delay in discovery. I'd point the court to the table set forth in the appellant's opening brief at page 31 because I think it's a helpful illustration. We all agree that that table essentially represents the Speedy Trial Act calculations that the court found in finding a Speedy Trial Act violation. We're not challenging that finding here. And if you see the first two rows of that chart represent the four or five month delay while the defense was supposedly waiting for discovery. For the majority of that time period, the Speedy Trial Clock Act was told. The defense counsel filed a discovery motion on July 21st with the express purpose of tolling the Speedy Trial Act. From July 1st through October 26th, while defense counsel is supposedly waiting for this discovery, she doesn't come to court. Is there some reason she's not waiting? I think it's undisputed she was waiting for discovery. Of course. I apologize. I didn't mean to represent she was not waiting for discovery. She was waiting for discovery. However, she had a motion hearing on the calendar on September 26th. And when she came to court, she did not say, we're not receiving the discovery. I've called the prosecutor. We have a problem. She said, I have a discovery motion on file and continued the hearing. And in any event, that period was told under the Speedy Trial Act. So there's no connection between this five month delay and the violation that occurred. The violation that occurred occurs in the third row of the appellant's table. Eighty-three days of the clock running was attributable to defense counsel coming to court or emailing the courtroom deputy and asking for a continuance. The majority of that time was after everyone agrees defense counsel had all of the discovery. Counsel, here's the rub up, but it's really Judge Marshall's question. We don't often see transcripts like this. And the judge who's much closer to this than we are talks, I think, very candidly. And he was trying to be, I think, very diplomatic and very professional in saying at the same time, there's a real problem. Do you want to address the real problem he was concerned about? This wasn't the first time. You've read it. I'm sure you're very prepared. So please, can you get to that? Of course, Your Honor. Of course, Your Honor. And specifically mentions the history. Yes, Your Honor. And hard to know whether he's to ER 651 where the prosecutor appeared and filed a supplemental filing clarifying the case that had been before the same district judge, which is the Sabayan case. The district court had that case in mind and cited that case. I had a case a few months ago with this prosecutor and there was a delay. And the prosecutor came in and clarified, actually, yes, there was a delay, but there was no discovery violation here. And essentially, the court corrected it with a continuance. And the court struck the comments and said, you know, I probably said that off the top of my head without remembering all of the facts. So as an initial matter, those comments regarding the original prosecutor I would submit are not part of the record. However, to the extent that the district court is thinking of that prosecutor in any history, those are facts that the district court had in mind and considered and nevertheless determined that a dismissal without prejudice was appropriate so long as the United States agreed to withdraw that mandatory minimum. So opposing counsel's argument, and again, also presented in a very professional way, is that we've got comments here by the district court saying, you know, I'd like to know what the Ninth Circuit thinks about this delay. And he's, I think, very clearly citing to the history. Can you help us out? What is your response to that? Again, I would point the court to that 83 days where the speedy trial clock was running was because defense counsel was emailing the courtroom deputy and saying, I'd like a continuance because I need to prepare my substantive motions. She had all of the discovery. Now it was incumbent on us, and we accept responsibility for our contribution to the Speedy Trial Act violation. It was incumbent on us to respond and ask the district court to make an ends of justice finding on the record. We did not do that. And we are training our attorneys. Every new attorney who comes to our office is now receiving training on the Speedy Trial Act and the importance of making that record. Because often what happens in our district with such the heavy volume, a discovery motion is filed. It's given a motion hearing trial setting date. And the parties continue the case while they're filing substantive motions. And essentially a motion hearing date is continued and is tolling the clock. And at a certain point, something else happens, and that motion hearing turns into something else, and the clock is no longer tolled. And so what we are training our attorneys to do is to make sure that at each of those times we don't rely on that discovery motion, even though there is often a date certain and it does comply with Sutter to toll the time, to say, let's also make sure that the defense counsel is articulating the reason for the continuance and the district court is making an ends of justice finding. Because at the end of the day, this violation was a result of the district court, the prosecutor, defense counsel, failing to get that ends of justice exclusion on the record. It's a failure to make the record. It's not a failure to bring the defendant to trial within the time he wanted to be brought. Defense counsel came into court, emailed the CRD and said, I want a continuance. I need more time for my motions. We agreed. It was incumbent on us at that time to say, and your honor, could you also make an ends of justice exclusion? It would have been warranted. If defense counsel is saying I need more time, that's an ample reason for an ends of justice exclusion. And that is something we endeavor to fix. But doesn't the government have some responsibility in this case, or didn't the government have a responsibility to review these tapes and early on review all of them and provide to the defense, uh, the, those tapes, uh, again, early on so that we wouldn't have the problem that we have now that the tapes have been taped over or some have been taped over. Absolutely. Your honor, those video clips should have been turned over much sooner than they were. And we accept that. However, The opposing counsel argued that there's four times as many speedy trial violations out of this particular office. Is that right? There's, there are two decisions by this court finding those same sort of technical violations. One is the cruise case where it was, it was, you've read them. Okay. So yes, yes. I have no reason to answer that. That's what I'm looking for. Is your answer that the volume in your office is very high that you need to do training? What's the, what's the answer? You have to be concerned about this issue. Absolutely. Absolutely. Your honor. Um, the answer, the answer is twofold. One, this failure to get these findings on the record is something that we are training our attorneys to do. And, and the district court defense attorneys and the prosecutors are all at fault here. We are going to do better. Um, but the second answer is that the district court was aware of all of these facts of this supposed history. Let's say the history is what the district court thought it was and decided that nonetheless an appropriate remedy was to say to the United You can't, you cannot, um, keep that mandatory minimum charge that was warranted by the amount of drugs that were in the truck and it's, and you need to go back and get a new indictment without that. And the district court in its discretion determined that that was the appropriate sanction. And I don't think even if this court considers the history and even if this court considers the comments that the district court struck from the record, that those findings were implausible or illogical. What I don't remember is the dates. Can you give me the back? Did the ninth circuit say that this has been, uh, your honor, the cruise case was in 2015 and the Spanier case was in 2016. Thank you. And unless the court has any other questions, I have no additional questions. It looks like not. Thank you for your argument. Please put two minutes on the clock. Right ahead. Your honor, we certainly applaud the U. S. Attorney's office and their efforts to do training and, and we, we, we think that's a great step, a step in the right direction. But one of the things that the prosecutors tell our clients all the time is that you have to be accountable for your actions and the U. S. Attorney's office needs to be accountable for their actions in this case. And that's as simple as it gets. Counsel, why shouldn't we decide that the district court held them accountable and that's why there wasn't a 10 year mandatory minimum? Because all the district court essentially did is put the parties back in the place that they would have been if this delay hadn't happened. If this delay hadn't happened, then they, they wouldn't have done the 10 year mandatory minimum because that was something that came about as a result of, of the new administration and a change in policy. So honestly, it doesn't really do anything for the, arguably it does exactly that. It sets the time back. It comes as close as it, as the district court could to turning back the hands of time, doesn't it? That's correct. But one of the things that I think the, the United States Supreme Court said in Taylor is that district courts aren't actually free to fashion an equitable remedy. That's not what they're allowed to do. Their job is to go through the factors and even if they think it would be a good idea to, oh, well, I can, I can put this person back in this position. That's not their job. Their job is to go through the factors and decide on prejudice. And what happened here is that the district court said, well, because of this remedy that I'm really not supposed to fashion under the Supreme Court law, then I don't need to look at these factors. And that's not true. Taylor said that's not true. And because of that, we think that at a minimum, this court needs to remand for a, for the district court to make those findings, to apply the factors. But we think the better remedy here, given this history by this prosecutor, by the U.S. Attorney's Office, and I would point out that the District of Arizona hasn't had similar violations and they have just as high of a volume. But because of those violations and because they are pattern and a practice, we would ask for this court to also potentially consider dismissing with prejudice. And if there are no further questions, I will submit. Thank you, Your Honor. Thank you. Thank you both. We'll take that case under advisement and
judges: Fernandez, Christen, Marshall